## William M. Checkley, Appellee, v. Joseph Lay Company and Victor Automobile Company, Appellants.

1. FRAUD—*sufficiency of declaration.* A declaration by the buyer of an automobile alleging that the seller falsely and fraudulently warranted the machine to be as therein stated, the falsity of the warranty; that the same was made with the intention of inducing the purchase; that the seller had knowledge as to the falsity; that the buyer relied thereon and suffered injury, substantially presents all the essential elements of fraud and deceit.

2. FRAUD—*ignorance of false warranty.* Where the buyer of an automobile claimed that certain warranties were false, his ignorance of the falsity of the warranties may be inferred from the fact that he relied thereon.

3. FRAUD—*waiver of defect in pleading.* A defendant in fraud, pleading to an inartificially drawn count after demurrer is overruled, cannot thereafter complain of its informality.

4. FRAUD—*aider by verdict.* A good cause of action in deceit stated in a faulty manner may be cured by the verdict.

5. PRINCIPAL AND AGENT—*binding effect of agent's false statements to buyer.* Where an agent of an automobile manufacturer falsely states that the car has a certain capacity and is as good as a car of a certain make and that it is impossible to tell where the tonneau is joined to the rest of the body, such representations are binding upon the manufacturer in an action of deceit.

6. FRAUD—*instruction omitting essential requirements.* An instruction by a buyer of automobile, suing in deceit, peremptory in form, setting out certain false representations, that omits to state that the representations must have been fraudulently made for the purpose of inducing the purchase, and that the plaintiff must have relied upon such representations and have been deceived and damaged, is improper.

Appeal from the City Court of Mattoon; the Hon. JOHN McNUTT, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded. Opinion filed April 11, 1912.

CRAIG & KINZEL and E. E. McGRIFF, for appellants.

EMERY ANDREWS and JAMES W. & EDWARD G. CRAIG, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an appeal by the defendants from a judg-

ment rendered against them for $1,278. The addi-tional count of the declaration charges that on February 4, 1910, the plaintiff entered into negotiations with the defendants for the purchase from them of an automobile, at the price of $1,278; that the defendants, for the purpose of inducing the plaintiff to purchase the automobile at such price, then and there fraudu-lently and falsely warranted the same to be a full up-to-date new five passenger family touring car, with detachable tonneau, and to be as good as or better than a certain car known as the Buick car, and falsely rep-resented that it was impossible to tell where said ton-neau was joined together with the rest of the said car; that if said car was not a new, first-class, five-passen-ger car, right in every particular, and as good as or equal to the car known as the Buick car, and if said plaintiff was not perfectly satisfied with it, when he saw it, he did not have to take it and that said repre-sentations were made by said defendants with the in-tention and for the purpose of inducing the plaintiff to purchase the same, all of which representations and warranties were known by them to be false and un-true; that the plaintiff, relying upon said representa-tions and warranties of the defendants, purchased the same for the sum of $1,278, which said sum the plain-tiff, on May 6, 1910, paid to the defendants; that the defendants delivered an automobile to the plaintiff, on May 18, 1910, which was not the automobile for which the plaintiff had bargained, in that said automo-bile was not a new and up-to-date, five-passenger, fam-ily touring car, and was not as good as or equal to the car known as the Buick automobile, but was an assem-bly of out-of-date parts made by different automobile supply factories assembled and repainted and put in said machine; that the tonneau was not joined together with the rest of said machine in the manner stated by said defendants, but that there was a large space of one-half inch between said tonneau and the rest of

said machine; that said machine, instead of being a new, up-to-date, five-passenger, family touring car, perfect in workmanship, as represented by said defendants, and as good or better than the car known as the Buick car, was but an assembled car composed as theretofore stated, and in no way as good as the Buick car; all of which the defendants then and there well knew; that the plaintiff without delay after he saw said car and discovered the fraud and deceit that had been practiced on him, offered to return the said automobile to the defendants, and to rescind the said contract of sale so fraudulently made by the defendants, and told them he was not satisfied with it, but that the defendants refused to accept said automobile and to return to the plaintiff the purchase price thereof. After a demurrer to the declaration had been overruled the defendants pleaded the general issue thereto.

The evidence discloses that the defendant, the Victor Automobile Company, the manufacturer of an automobile called the "Senator," was a subsidiary company of the defendant the Joseph Lay Company, broom and brush manufacturers at Ridgeville, Indiana; that the plaintiff was a broom corn broker at Mattoon, Illinois, and one Nunemaker and one Taylor, hereinafter referred to, were engaged in similar business at Greenup, Illinois, and at Arthur, Illinois, respectively; that about February 1, 1910, Nunemaker informed the plaintiff that he was going to buy three of the defendant's cars; that by so doing he could get them for $1,250; that he would let the plaintiff and Taylor each have one at that price, and that he would not charge them any commissions. The evidence further tends to show that in order to induce the plaintiff to buy a car, Nunemaker made to him substantially the representations charged in the declaration, and stated, further, that if the car was not a success the plaintiff did not have to keep it; and that he, Nunemaker, would see that he did not, adding, "Now

that is what the Lays told me;" that upon the plaintiff expressing some doubt as to the air-cooled engine, Nunemaker asked him to write to the Lays; that instead of so doing the plaintiff wrote a letter of inquiry to Nunemaker, who in turn wrote to one of the defendants requesting them to write to the plaintiff in reference to the car. The evidence further shows that in response to such request, on February 12, 1910, the defendant, the Victor Automobile Company, wrote to the plaintiff a letter containing the following statements: "We can fully guarantee the car in every way. Our tests as to cooling by air has been very severe and in no instance has it failed in doing the cooling complete, better in fact than any water cooled of the same H. P. that we have seen tested. We guarantee this cooling to be all that we say in every way. You must understand that all machines warm up but the 'Senator' does not get warm enough to hurt the running qualities and many water cooled engines get hot enough to spoil them or at least injure them. The 'Senator' runs any day of the year hot or cold weather, and no wait or bother with water either. We know its merits and believe in time, that it will be recognized by users too. Hope to have the pleasure of putting up a car for you that will be correct in every single part and put up on honor as to workmanship."

The evidence further shows that on February 23rd, the plaintiff entered into a contract with Nunemaker for the purchase of one of the cars in question, and that Taylor purchased the remaining one; that on April 6th, the plaintiff sent to the defendants a draft for $1,278 in payment for his car; that the same was thereafter shipped to him from Ridgeville. The plaintiff testified that upon the arrival of the car at Mattoon he found screw holes in the back of the front seat where the robe rail should have been; that the extra tire was old and useless; that there were holes in the fenders; that the tonneau did not fit close to the bed;

that the lamps were tarnished, and the horn battered; that the finish appeared old; that the car had no magneto and that the carburetor appeared to have been used for several years. He further testified that when he tried to use the car he found that the engine heated easily; that after he had run it ten or twelve miles he could not pull five passengers up a small hill, and that the car was useless and worthless for the purposes for which he had bought it; that he notified Nunemaker, by letter, to that effect. The evidence further shows that thereupon Nunemaker went to Mattoon, and after riding in the car, wrote to the defendants enclosing the plaintiff's letter; that the defendants then sent one Carpenter, the person who designed and made the cars, to Mattoon; that Carpenter tried to make a trip with the car with five passengers, but without success, and then stated that he had originally designed the car for a two-passenger run-about, but that the defendants had ordered him to put a tonneau on it, and that the load was too heavy for the car, and that Carpenter then took the car to a machine shop for repairs, whereupon plaintiff told him to keep the same, and demanded his money back, and then instituted the present suit. The evidence adduced by the defendants tended to show that all the parts composing the car were of good quality, of proper size, strength and material, and such as were used in automobiles of like kind; that they were properly put together and that the car fully met the requirements of the written contract of purchase, and further, that its failure to operate satisfactorily was due to the fact that the plaintiff permitted it to be tampered and tinkered with by incompetent repair men.

The additional count upon which the issues were tried, although inartificially drawn, alleges that the defendants fraudulently and falsely ''warranted'' the automobile to be as therein stated, the falsity of said ''warranty;'' the making of the same with the inten-

tion of inducing the plaintiff to purchase; the knowledge of the defendants as to their falsity; the reliance by the plaintiff thereon, and the injury to him, thus substantially presenting all the essential elements of actionable fraud and deceit. (Foster v. Oberreich, 230 Ill. 525.) Ignorance on the part of the plaintiff of the falsity of such "warranties" may well be inferred from the fact that he relied thereon. Having pleaded to said count after demurrer thereto was overruled, the defendants cannot thereafter complain of its informality. A good cause of action was thus stated, although in a faulty manner, and any defect therein was cured by the verdict. (Foster v. Oberreich, *supra.*) The evidence is ample to establish that Nunemaker was the agent of the defendants in the transaction. They were therefore bound by his representations. It cannot be questioned that the representations made by him to the effect that the car was a five-passenger car, right in every particular, and as good as or equal to the car known as the Buick car, and the further representation of the defendant the Victor Company, by its letter of February 12th, to the effect that "our tests as to cooling by air have been very severe, and in no instance has it failed in doing the cooling complete, better in fact than any water cooled of the same H. P. that we have seen tested. We guarantee this cooling to be all that we say in every way. * * * The 'Senator' does not get warm enough to hurt the running qualities," etc., were statements of fact material to the transaction in question. The evidence upon the issues as to whether such statements were untrue, whether the plaintiff relied thereon, and whether the defendants knew the same were false and made the same with intent to deceive and defraud the plaintiff, and thus induce him to buy the car, is in conflict. As the judgment must be reversed and the cause remanded because of error in the instructions,

it is unnecessary to further discuss or weigh the evidence.

The plaintiff's fourteenth instruction was peremptory in form, and told the jury that if they believed from a preponderance of the evidence, that the car was not as good as the Buick, that the defendants represented that it was, and knew that it was not, they should find for the plaintiff, thus omitting the essential requirements that the representations must have been fraudulently made for the purpose of inducing the plaintiff to buy the car, and that the plaintiff must have relied upon such representations, and in consequence been deceived and damaged,—which are essential elements in actions of this character.

It is well settled that an instruction directing a verdict for either party in the event that the jury should find that certain enumerated facts were established, must contain all the facts essential to authorize such verdict, and that error in this regard cannot be cured by other instructions. (Partridge v. Cutler, 168 Ill. 512.) The third instruction given at the request of the plaintiff is subject to a like criticism.

For the errors indicated, the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*